Filed 8/25/15  Avigdor v. Sprouts Farmers Market CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EARL AVIGDOR, | D065297 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00096760-CU-PL-CTL) |
| SPROUTS FARMERS MARKETS, LLC, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Lisa Schall, Judge.  Affirmed.

The Feldman Law Group and Michael A. Feldman, Gregory S. Cilli for Plaintiff and Appellant.

Horvitz & Levy and Peter Abrahams, Lisa M. Freeman; Law Office of Richard A. Guido and Richard A. Guido, Julie Morris Soden for Defendant and Respondent.

Earl Avigdor appeals a judgment entered following a jury's finding that respondent Sprouts Farmers Market, LLC[1] was not negligent for injuries he suffered at a Sprouts store. Avigdor contends the court prejudicially erred by admitting testimony—lacking sufficient foundation—that a Sprouts store manager had received no other complaints of someone who had suffered an injury similar to Avigdor's at the store. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Avigdor sued Sprouts for personal injury, alleging causes of action for general negligence, products liability and premises liability based on an incident occurring when he was shopping at a Sprouts store in Chula Vista. As to the general negligence cause of action, he alleged he "was in the produce section getting bananas from the banana display and came into contact with a sharp protruding piece of metal located at the base of the display causing severe permanent damage to his right toes." As to the products liability cause of action, he alleged Sprouts "did not do a proper daily scan of the store, and remove any items or protruding items that has caused injury [*sic*] to [him]." He alleged regarding the premises liability cause of action that the "banana display had a metal piece protruding at the bottom of display and caused injury to [his] foot."

The parties' joint trial readiness conference report included this statement: "This is a case of disputed liability arising from an incident that occurred on May 5, 2010[,] at the

---

1    The respondent in this case, Ronald Cohn, Inc. dba Henry's Marketplace, erroneously named as Sprouts Farmers Markets, LLC, was referred to in the trial court as Sprouts. We therefore refer to the respondent that way in this opinion.

2

defendant's property store whereby [Avigdor], who was wearing open[-]toed sandals injured his toe on a banana display in the produce section of the market."

Over Sprouts's objection, the trial court initially granted Avigdor's motion in limine to exclude evidence from the Sprouts store manager who had not received reports of prior accidents or claims concerning injuries involving the display case. Later, Vojislav Banjac, Ph.D., an engineer, testified as an expert about his safety analysis of the circumstances surrounding Avigdor's foot injury: "[A]n average consumer probably at some point in time getting very close to the display stand will probably start reaching out one or both arms to start selecting the bananas. [¶] But what is facing us down below is . . . the combination of several unsafe factors. First of all, we have—it's the piece of plywood that's about three-quarters of an inch thick . . . . It is sticking out roughly an inch . . . . [¶] In addition to that, it's only about an inch and a half off the ground. So certainly not—I don't mean to invoke any intention. But *it's a trap of sorts* for the human foot. If you look at the alignment of the dimensions of the human foot—another interesting aspect of physics, the dimensions of the front part of the human foot start at right about an inch and a half. *So it's like a perfect storm that's happening here on this edge.* Three-quarter-inch-thick plywood, juts out about an inch out from this base, sits at about an inch and a half height off the ground and it's painted black. And it's waiting for a potential collision with a foot. [¶] That, to me, is the main basis for this being an unsafe and hazardous situation. And raised edge or lip like that jutting out painted black only not even a couple inches off the ground, it shouldn't be there. There's no reason for it. It's calling for trouble." (Italics added.)

3

In light of Dr. Banjac's testimony, Sprouts's counsel requested the court revisit its ruling on the motion in limine, and permit it to recall the store manager, John Cordova, to testify he had not received any other complaints from customers regarding the display. Avigdor's counsel opposed the request, suggesting it would be time consuming and adding, "we are talking about people wearing shoes, not wearing shoes, I didn't go into any of that with [Dr. Banjac] because [of the court's] prior ruling [regarding the motion in limine]."

The court ruled Sprouts could recall the store manager and limited the scope of inquiry regarding complaints of prior incidents at the store, specifically informing Avigdor's counsel regarding permissible cross-examination: "[Y]ou're given every opportunity to go into those questions with [the store manager] questioning the protocol and procedures . . . with what claim of certainty can he make that everything gets reported to him. I mean, you don't know if someone got injured and left the store and never said anything to [the store manager]. [¶] . . . [¶] You're entitled to go open the door, is what I am saying, beyond the scope of [defense counsel's] inquiry because he is going to be recalling [the store manager] back to the stand. So I will give you that latitude."

Cordova testified on direct examination on recall: "For the past—for 12 years, I have been the store manager of the Chula Vista and Eastlake location back and forth, and I have been, the past three years, overseeing both locations as vice president of the company." Cordova testified that not once did it ever come to his attention that a customer or employee had made a claim following an injury related to the base of the

4

display stands. On cross-examination, this brief colloquy occurred between defense counsel and Cordova:

"[Defense Counsel:] [S]o you—you don't know if there's ever been anybody who's actually been injured by this type of condition. You just know that there has never been a claim made, correct?

"[Cordova:] There's never been a claim. There's never been a complaint.

"[Defense Counsel:] That you know of?

"[Cordova:] That I know of managing the stores and operating the stores, correct."

During closing argument, Avigdor's counsel summarized his view on Cordova's testimony regarding the absence of prior incident reports: "Now, Mr. Cordova at the very end, he testifies that he wasn't aware in his years of being a store manager of anybody ever having an incident with this exposed edge [of the display case]. That was the testimony. [¶] [Sprouts] didn't produce any testimony that said that [Cordova] went and reviewed the records or the database of all the incident reports. And he did a thorough analysis of it. There wasn't any testimony that any investigation was done as to whether or not there was any other incidents [*sic*] involving this display case or this exposed edge. In fact, it was his testimony, as he sat here today, that he just simply wasn't aware of any other incidents over all these years of experience from him going back between the Chula Vista store and the Eastlake store. [¶] I think . . . Dr. Banjac's opinions and his basis for his opinions clearly establish that this exposed edge created an unreasonable risk of harm."

5

Sprouts's counsel argued to the jury his view of Cordova's testimony regarding safety issues at the store: "Mr. Cordova got up on the stand and says that he has 18-to 20,000 customers come through that store a week. That's a million customers a year. And they have no reported injuries on this stand. In the 13-plus years that he's worked there, they have no injuries on these stands. No documents. No reports of injuries. [¶] Was he there every day? No. Would he have found out, as the VP, over the last three or four years of a problem? Yes. Are they conscious and cognizant of safety in the store? Of course. First of all, you want to have a safe environment in the store. [¶] Secondly, you don't want to end up here [in court]. Like he said, you don't want to end up here, so you're always looking for safety issues. And if you find one, you're going to take care of it. They never did anything with these display cases because it was never a problem here. This isn't something that is so open and obvious that, 'Oh boy, we should have fixed that. Wow.' "

The jury decided by special verdict that Sprouts was not negligent.

DISCUSSION

Avigdor contends the court prejudicially erred by allowing Cordova to testify about the absence of claims of injury related to the store display stand because the testimony lacked foundation.

" 'The abuse of discretion standard of review applies to any ruling by a trial court on the admissibility of evidence.' [Citation.] 'Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted

6

in a manifest miscarriage of justice.' " (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 919.)

A claim that evidence was erroneously admitted because an insufficient foundation was laid is forfeited when there was no objection in the trial court. "The ground of the rule is that the proponent would have had opportunity to obviate the objection if it had been made at the trial." (*Bank of America Nat. Trust & Sav. Ass'n. v. Taliaferro* (1956) 144 Cal.App.2d 578, 582.) Here, we regard the contention as forfeited because Avigdor did not object to Cordova's testimony on the ground of lack of foundation. Rather, he objected on other grounds, namely it would involve an undue consumption of time and he had failed to thoroughly examine Dr. Banjac. "To raise on appeal the point of erroneously admitted evidence there must be a showing that a timely objection had been made at the trial directing the attention of the court to the particular evidence sought to be excluded. To fail to make such objection, or to make it defectively by specifying the wrong ground, constitutes a waiver." (*Wagner v. Osborn* (1964) 225 Cal.App.2d 36, 43.)

Setting aside Avigdor's waiver and addressing the contention on the merits, we conclude the court did not abuse its discretion by admitting Cordova's testimony on recall. In light of Dr. Banjac's testimony the store's display case was a trap, the court did not err by permitting Sprouts to recall the store manager to provide testimony regarding the absence of similar incidents of prior personal injuries suffered at the store. Cordova had adequate foundation for his testimony. As manager at the Chula Vista store for several years, Cordova reasonably was expected to know about personal injury incidents

7

occurring at the store; thus his testimony was supported by sufficient foundation.  In any event, in this case, any limitations in the foundation merely went to the weight of his testimony, not its admissibility.  Therefore, the jury was in the best position to evaluate how much weight to give his testimony.

The trial court specifically gave Avigdor's counsel broad latitude to cross-examine Cordova about Sprouts's protocol and procedures for handling injury claims.  Indeed, Avigdor's counsel seized the opportunity and on cross-examination attempted to undermine Cordova's testimony by noting that the purported absence of claims or reports of prior incidents at the store were based exclusively on Cordova's personal knowledge, leaving open the suggestion that the manager might not have known about other personal injury incidents at the store.  Avigdor's counsel followed up by arguing to the jury that Sprouts had failed to present evidence it investigated whether any other incidents involved the same display case or exposed edge.  Notwithstanding the evidence Avigdor's counsel adduced from Cordova and his closing arguments, the jury resolved the conflict in evidence by finding in Sprouts's favor.  We do not reweigh the jury's credibility determination.  "It would seriously disturb our entire judicial system if appellate courts were to become triers of fact and attempt to make nice distinctions as to credibility of witnesses and the weight of testimony.  It needs no authority to support the rule that this court will not disturb a finding of fact by the [trier of fact] where there is substantial evidence to support it."  (*Banks v. Pann* (1927) 82 Cal.App.20, 22.)

DISPOSITION

The judgment is affirmed.  Sprouts Farmers Markets, LLC is entitled to costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

9